AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
INFORMATION ASSOCIATED WITH Instagram User ID: " Smokedoutkyd" and " gfolks" , IS STORED AT PREMISES CONTROLLED BY INSTAGRAM, INC. c/o META PLATFORMS. INC. .

Case No. **23mr1558**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of __New Mexico__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed in Indian Country |
| 18 U.S.C. § 1111 | First Degree Murder |

The application is based on these facts:

See attached affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Rainy Hardy, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephonically Sworn and Electronically Signed *(specify reliable electronic means).*

Date: **8/15/2023**

*Judge's signature*

City and state: Farmington, New Mexico

B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH Instagram User ID: "Smokedoutkyd" and "gfolks", IS STORED AT PREMISES CONTROLLED BY INSTAGRAM, INC. c/o META PLATFORMS, INC. | Case No. _____ <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Lorraine Hardy, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a social media provider headquartered at 1601 Willow Road, Menlo Park, CA, 94025. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A) to require Meta Platforms, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am currently serving as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape. I have been with the FBI for approximately 4 years. I have received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My

investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. The information set forth in this affidavit has been derived from an investigation conducted by the Farmington Resident Agency of the FBI, the Jicarilla Apache Police Department (JAPD) and the Jicarilla Apache Police Department Criminal Investigators (JAPDCI). During my investigation, I have developed information I believe to be reliable from the following sources:

   a. Information provided by the FBI, JAPD, JAPDCI, and other law enforcement officials;
   b. Information provided by witnesses; and
   c. Records from the FBI National Crime Information Center (NCIC), Jicarilla Apache Tribal Courts, and New Mexico Courts.

5. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause for the requested warrant.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § § 1153 & 1111, first degree murder in Indian County.

## RELEVANT STATUTES

7. This investigation concerns alleged violations of the following:

    a. Title 18 U.S.C. § 1153-Offenses committed in Indian Country; and

    b. Title 18 U.S.C. § 1111-First Degree Murder.

## PROBABLE CAUSE

8. On August 7, 2023, at approximately 6:00 p.m., the Jicarilla Apache Police Department (JAPD) responded to a report of a shooting on East Side Street in Dulce, New Mexico, which is located within the Jicarilla Apache Reservation. I am informed by a JAPDCI, that he responded to the location and found the deceased body of the victim (hereinafter referred to as JOHN DOE), year of birth 2007, lying in the street with seven spent .40 caliber shell casings around JOHN DOE's body. Upon further examination, the JAPD CI observed multiple entry and exit wounds on JOHN DOE's body that appeared to be bullet holes. Based on his training and experience, the JAPDCI believed JOHN DOE was murdered by gunfire and treated the incident as a homicide.

9. Through a joint investigation by JAPD and the FBI, I learned that JOHN DOE's family members and other residents of Dulce believed an individual named Justin Puerto (hereinafter referred to as PUERTO), year of birth 2008, was responsible for the possible murder

of JOHN DOE. At approximately 11:00 p.m., JAPD received a tip that PUERTO was presently at 16 Onate Street in Dulce, the residence of his girlfriend (hereinafter referred to as H.L.), year of birth 2007, and H.L.'s mother (hereinafter referred to as M.L.) year of birth 1982. Shortly thereafter, JAPD and the FBI went to 16 Onate Street and JAPD apprehended PUERTO.

10. Based on PUERTO's date of birth, I believed he was approximately 15 years old. PUERTO said he lived with his grandmother (hereinafter referred to as L.W.), year of birth 1957. L.W. stated she is PUERTO's legal guardian. On August 8, 2023, at approximately 12:03 a.m., PUERTO was provided his Miranda Warnings in the presence of L.W. He stated that he understood his rights and agreed to speak with law enforcement. PUERTO stated that he was friends with JOHN DOE and that he heard from multiple sources that JOHN DOE had been killed on the evening of August 7, 2023. PUERTO stated that prior to the murder he was with his older brother Travis Begaye Jr. (hereinafter referred to as BEGAYE), year of birth 2004, hiking on the reservation. After finishing the hike, PUERTO and BEGAYE were walking back and heard nearby gunshots. PUERTO and BEGAYE ran away from the sound of gunshots and went to a family member's house. Eventually, PUERTO and BEGAYE later managed to get back to L.W.'s house. On August 7, 2023, at approximately 7:30 p.m., PUERTO called his girlfriend, H.L. and arranged to have her mother, M.L. pick PUERTO up from his residence and take him to her residence at 16 Onate Street. PUERTO stated that he did not have a firearm and was not of age to purchase one. PUERTO stated he did not know who shot JOHN DOE. PUERTO provided his cellular telephone number as (575) 419-0643.

11. On August 8, 2023, at approximately 12:45 a.m., FBI spoke with BEGAYE in the vicinity of 16 Onate Street. BEGAYE's date of birth is December 15, 2004, meaning he was 18 years old at the time of the interview. During our conversation, BEGAYE stated that he heard

4

JOHN DOE was dead and BEGAYE knew that JOHN DOE and PUERTO were close friends. BEGAYE said he tried to see and speak with PUERTO early in the day on August 7, 2023, but PUERTO's vibe seemed off. BEGAYE informed us that he did not see PUERTO on August 7, 2023, and that he did not go on a hike with PUERTO. BEGAYE further stated that on August 7, 2023, he received three Instagram voice calls from PUERTO around the time that PUERTO said they were on a hike together. BEGAYE provided PUERTO's Instagram handle as "Smokedoutkyd". BEGAYE does not currently have a telephone, but PUERTO was able to contact BEGAYE through BEGAYE's girlfriend's cellular telephone. During the first call, PUERTO told BEGAYE in sum and substance that he had a plan to make some money. During the second call, PUERTO told BEGAYE in sum and substance that PUERTO successfully made money that afternoon. During the third call, PUERTO called BEGAYE and PUERTO said he had "fucked up." BEGAYE stated that PUERTO sounded like he was crying during the phone call and was questioning whether what happened was worth the money he made. BEGAYE believed that PUERTO was in some way involved in the murder of JOHN DOE.

12. On August 8, 2023, after speaking with H.L., FBI requested the PUERTO cellular telephone for evidentiary purposes. PUERTO stated his cellular telephone was lost approximately a week before. PUERTO stated he now uses Instagram to voice call people, or he used H.L.'s cellular telephone. PUERTO then opened H.L.'s cellular telephone and showed the recent call history to FBI. There appeared to be calls between H.L. and PUERTO's contact, which was saved as "Justin" with a blue heart symbol, as recently as August 7, 2023. H.L. and M.L. consented to the FBI taking custody of H.L.'s cellphone telephone and examining the contents of the cellular telephone.

13. On August 8, 2023, JPDCI received an Instagram video from a JPD Officer whose daughter is friends with PUERTO on Instagram. The Instagram video depicted PUERTO near River Road Platform in Dulce, which is less than a mile from the scene of the shooting, firing a black handgun into the air. The Instagram video was posted on the day of the shooting from H.L.'s Instagram handle (the handle is known to your affiant but is withheld because it reveals H.L.'s identity). PUERTO was wearing a black hoodie, white jeans or light-colored jeans, black shoes and a black beanie hat in the video. Later, JAPD retrieved three 40-caliber casings in the same area as where the video was filmed. The 40-caliber casings were the same manufacturer as the 40-caliber casings found at the crime scene, all were Federal Ammunition. The casings were collected and entered into evidence for ballistic examinations at a later date.

14. H.L was interviewed a second time on August 11, 2023, by FBI and it was learned H.L. filmed the Instagram video of PUERTO near River Road Platform shooting the firearm, a week prior to the incident. H.L. utilized her cellular device number to film the video and upload the video to her Instagram account. H.L. was also aware PUERTO had in his possession a black handgun make and model unknow and Puerto kept the handgun in a dark colored duffle bag. H.L. also disclosed PUERTO came over to her residence the evening after the incident and while in H.L.'s bedroom PUERTO told H.L. he "did it". H.L. believed PUERTO was referring to the shooting incident and death of JOHN DOE which occurred earlier that day.

15. JOHN DOE's friend (hereinafter referred to as E.L.), year of birth 2006, was interviewed by law enforcement. E.L. stated PUERTO walked up to him during school on the day of the incident and said, "I'm gonna make my mark today". E.L believed that statement meant PUERTO was going to kill someone. After school PUERTO walked up to E.L. and JOHN DOE and arranged to make "a deal" after school. E.L. stated both PUETO and JON DOE sold illegal

6

drugs and the deal PUERTO made with JOHN DOE was for 600 dollars cash and some vapes. E.L. believed PUERTO was acting weird and told JOHN DOE not to do the deal with PUERTO. E.L. believed PUERTO was jealous of JOHN DOE. At approximately 4:30 p.m. E.L and JOHN DOE hung out after school until approximately 4:30 P.M. E.L. left for football practice and JOHN DOE went to go meet PUERTO for their arranged deal. When E.L. arrived home later that night he heard about the shooting incident and immediately believed PUERTO killed OHN DOE. E.L. confirmed JOHN DOE used Instagram to communicate with other classmates including him and PUERTO. E.L. provided JOHN DOE's Instagram handle as "85.136rs" and PUERTO's Instagram handle as "gfolks". E.L. stated PUERTO had multiple Instagram accounts and changed them often.

16.  On August 9, 2023, Dulce High School Administration notified JPDCI they were conducting an internal investigation into multiple statements received by students that PUERTO had threatened them on Thursday and Friday last week (August 3 and 4, 2023). One student (hereinafter referred to as D.L.T.), year of birth 2006, stated PUERTO told him "You better watch your back or this 40 is gonna bite you." PUERTO gestured with his hand and finger signifying a gun. Later, PUERTO passed D.L.T. in the hallway and said, "you better watch this forty and quit acting like a bitch and keep walking." Another student (hereinafter referred to as D.J.T.), year of birth 2007, stated PUERTO approached him at school and pointed a finger in D.J.T.'s face and said, "tell tour brother he better watch out for that forty." D.L.T. and D.J.T. are brothers.

17.  Dulce High School Security, later discovered video security footage from the day of the incident, PUERTO was shown walking up to E.L. and JOHN DOE outside of the school. The video was observed by law enforcement and the three of them appeared to be talking. The interaction appeared to be amicable and friendly. After a short amount of time PUERTO walked off.

18. On August 9, 2023, JPDCI conducted a witness interview of M.T., year of birth 1984. M.T. lives in a house next to the location of the crime scene. M.T. was driving to Chama at approximately 5:43 PM and saw PUERTO, JOHN DOE, and who she believed to be BEGAYE standing in the road talking. M.T. worked at the Department of Youth Summer Program and knew PUERTO and JOHN DOE. M.T.'s boyfriend (hereinafter referred to as P.A.), year of birth 2003, was driving with her and recognized BEGAYE and knew him as PUERTO's brother. PUERTO was wearing a black hoodie with white graphics and black pants. BEGAYE was also dressed in all black and wore a black covid face mask. Both PUERTO and BEGAYE had stern looks on their faces. JOHN DOE looked at M.T. as she drove by and appeared to be scared. M.T. and P.A. saw the group, including PUERTO and JOHN DOE, just minutes before JAPD received the call of a shooting at that location.

19. Based on statements made by witnesses and information obtained from law enforcement during the course of this investigation, the Instagram User IDs, "Smokedoutkyd" and "gfolks", may have been used by PUERTO on or around the time of the crime. Because John Doe and PUERTO knew each other and may have communicated to set up their meeting and "deal" on the day of the crime, there may be information pertinent to the investigation in either the "Smokedoutkyd" or "gfolks" accounts. Thus, I believe the information and media stored electronically on those Instagram accounts may contain evidence of such crime. This warrant authorizes a review of the electronically stored media and information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities of the commission of the crime.

20. The incident under investigation occurred within the exterior boundaries of the Jicarilla Apache Indian Reservation. PUERTO, BEGAYE, and JOHN DOE are enrolled members of the Jicarilla Apache Tribe.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

34. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

35. Based on the forgoing, I request that the Court issue the proposed search warrant.

36. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated."

37. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Instagram. Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

38. Assistant United States Attorney Alexander Flores has reviewed and approved this application.

39. I swear that this information is true and correct to the best of my knowledge.

*J. Hardy*

Special Agent Rainy Hardy
Federal Bureau of Investigation

Electronically SUBSCRIBED and telephonically SWORN to me this 15th day of August, 2023.

HONORABLE B. Paul Briones
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram User IDs "Smokedoutkyd and gfolks" that is stored on servers owned, maintained, controlled, or operated by Meta Platforms, Inc. a company headquartered in Menlo Park, California, including information located on servers that are not physically located within the United States but which are nonetheless owned, maintained, controlled or operated by Meta Platforms, Inc.

Instagram shall disclose responsive data, if any, by sending to Special Agent Rainy Hardy, 215 West Elm Street, Farmington, New Mexico, 87401 using the US Postal Service or another courier service or electronic communication via lhardy@fbi.gov.

## Attachment B

## Particular Things To Be Seized

I. Information to be disclosed by Instagram:

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram is required to disclose the following information to the government for each account listed in Attachment A from July 24, 2023 through current:

a. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b. All past and current usernames, accounts passwords, and names associated with the accounts;

c. The dates and times at which the accounts and profiles were created, and the Internet Protocol ("IP") address at the time of sign-up;

d. For the time period set forth in Section II, all IP logs and other documents showing the IP address, date, and time of each login to the accounts, as well as any other log file information;

e. For the time period set forth in Section II, all information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including the date and time of those accesses;

2

f. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g. For the time period set forth in Section II, all communications or other messages sent or received by the account;

h. For the time period set forth in Section II, all user content created, uploaded, or shared by the account, including any comments made by the accounts on photographs or other content;

i. All photographs and images in the user gallery for the account;

j. All location data associated with the account, including geotags;

k. All data and information that has been deleted by the user;

l. A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list), as well as any friends of the user;

m. A list of all users that the accounts have "unfollowed" or blocked;

n. All privacy and accounts settings;

o. All records of Instagram searches performed by the account, including all past searches saved by the account;

p. For the time period set forth in Section II, all information about connections between the accounts and third-party websites and applications;

q. All records pe1iaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

3

**The Provider is hereby ordered to disclose the above information to the government within 14 DAYS of service of this warrant.**

II. Information to be seized by the government for the time period of July 24, 2023 to current:

    a. All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 2252 and 2252A involving the accounts from "Smokedoutkyd" and "gfolks" including, for each account identified on Attachment A, information pertaining to the following matters:

    b. Records relating to who created, used, accessed, or communicated with the account, including any records about their identities and whereabouts.

    c. All data and information associated with the profile page, including photographs, videos, messages, conversations, "bios," and profile backgrounds and themes;